GEORGE B. LEWIS AND ANOTHER *vs.* PATRICK FARRELL AND OTHERS.

*G* authorized *T* to make a loan for him and take a mortgage to secure it in *G's* name. *T* took the mortgage and put it on record, but did not inform *G*. *T* then sold the notes and mortgage to the plaintiffs. *G* afterwards, upon a representation made to him that the mortgage debt

Lewis v. Farrell.

was paid, gave a quitclaim to the mortgagor; it being found that he did it in good faith and in the belief that the mortgage debt was paid. Held that G's conduct in the matter, not being a repudiation of the mortgage as not accepted, but a recognition of it as valid, was sufficient to warrant the conclusion that it had been legally accepted by him, without reference to the prior authority given to T to take it in his name.

But that the prior authority was sufficient to constitute the acceptance by T his acceptance, even though he was not informed that the mortgage had been made.

T, without informing G that he had taken the mortgage, sold it and the notes secured by it, which were payable to bearer, to the plaintiffs. Held that he had power by such sale to pass a legal title to the notes.

After the quitclaim was put on record F acquired a legal title to the premises without paying any consideration therefor. Held that, not being a *bonâ fide* purchaser for value, his title could not take precedence of the equitable rights of the plaintiffs.

There were two notes secured by the mortgage, which were sold to two different parties and the mortgage was delivered to one of them. Held that the note delivered without the mortgage drew to itself its proportion of the mortgage security, and that the holder of the mortgage held it so far for the benefit of the holder of that note.

[Argued June 7th—decided June 8th, 1883.]

SUIT for a foreclosure and for other equitable relief brought to the Superior Court. Facts found and case reserved for advice. The facts are sufficiently stated in the opinion.

*J. Huntington* and *J. H. Webb*, for the plaintiffs.

*H. B. Munson* and *E. F. Cole*, for the defendants.

LOOMIS, J. The first question that arises in this case is, whether the mortgage made by Patrick Farrell and his wife to Garwood H. Atwood ever became a valid one by the acceptance of the mortgagee. It is found that the mortgage was made on the 10th of June, 1871, to secure two notes of $1000 and $500 executed by Patrick Farrell at the time the mortgage was given, made payable to Garwood H. Atwood or bearer on demand, the loan being made through one Tolles; and that, although the mortgage was put on

record by Tolles, Atwood was in fact ignorant of its exist-
ence until January, 1880, when, upon a representation
falsely made to him by some person interested that the debt
which the mortgage was given to secure had been paid, he
executed a release of the mortgage to the Farrells, who
knew at the time that the mortgage debt had not been paid.

The question of the bad faith of the Farrells, and of its
effect, is to be laid out of the case for the present, as we are
considering now only the question whether the mortgage
ever acquired a valid existence. It is to be observed that
Atwood, in releasing it, did not repudiate it, or deny the
right of Tolles to take it in his behalf, but made the release,
as it is found, " believing that the debt was paid, and rely-
ing on these representations," and that he acted " in good
faith in making the release." There is here a very clear
implication that he did not release the mortgage with any
intention to express a non-acceptance of it, or to deny its
validity, while the " good faith " which it is found that he
exercised in the matter must have been a good faith towards
parties who might have rights under the mortgage, as there
could be no others whom his good faith or bad faith could
affect. If there were no other facts bearing upon the ques-
tion we think his conduct at this point might properly be
regarded as an acceptance of the mortgage and the recogni-
tion of it as a valid one.

But we are not left to this incident for a determination
of this question. It is found that sometime prior to the exe-
cution of the mortgage Atwood " had given to one Lewis N.
Tolles authority to make a loan to Patrick Farrell, secured
by mortgage in the name of Atwood," and that Tolles made
this loan and took this mortgage accordingly. It is not
explained why Tolles did not at once inform Atwood that
he had made the loan and taken the mortgage, nor how it
happened that within a week after taking the notes he sold
them to the plaintiffs. He may have intended when the
loan was made to use Atwood's money for it, and have
changed his mind when, a few days after, he found that the
money could be had of the plaintiffs, who it is found, paid

the full face of the notes in the purchase.   This, if it be
the fact, fully explains his. neglect to bring the matter of
the loan and mortgage to the knowledge of Atwood.
But whatever the explanation may be, we can not regard
the taking of the mortgage in Atwood's name as unauthor-
ized, and if so no personal acceptance of it by Atwood was
necessary.  It was a legal mortgage when taken, and Tolles,
as the bearer of the notes, and especially as the owner of
them, which he is found to have been, could by his delivery
of them for a valuable consideration to the plaintiffs, vest in
them a good legal title to them.  It is found that Tolles was
the owner "unless as matter of law the fact that Atwood
did not know of the existence of the notes and mortgage
precludes such ownership."   But clearly this could not,
merely as a matter of law, affect the case, if he had authority
to make the loan and take the mortgage in the first instance.
He may, as before suggested, have made the loan with his
own funds, intending to deliver the securities to Atwood
and get the money from him, and have changed his mind on
the transaction with the plaintiffs being proposed.   In this
case the notes would be his property until delivered to
Atwood, and it is evident that Atwood never paid the
money to Tolles, as in that case he would not have been
ignorant of the existence of the notes.   Tolles acted as
Atwood's agent in taking the notes and mortgage for him,
and thus they were legally taken, while his change of mind
as to the disposition to be made of them did not invalidate
what was already valid.   We entertain no doubt as to the
valid title of the plaintiffs to the notes.

The next question is, what effect the release of the mort-
gage has upon the rights of the plaintiffs.   The finding on
this point is, that on the 21st of January, 1880, "some per-
son or persons falsely and fraudulently informed said Atwood
that the note was paid, he supposing that there was but one
note and that of $500; and that thereupon, without receiv-
ing any consideration, believing that the debt was paid, and
relying on these representations, he in good faith executed
the quitclaim deed to Patrick and Mary Farrell.   The said

Patrick and Mary Farrell, at the time, knew that the notes owned by the plaintiffs were due and outstanding and unpaid." It is very clear here that the Farrells were guilty of a fraud which precludes them entirely from taking advantage of the release. Who the "person or persons" were who made the false representations does not appear, but they must unquestionably have been some persons interested or agents of such persons. A gross fraud was clearly intended which should exclude from the favor of the court every person to whom it could be brought home.

But this release was put upon record, and any person afterwards acquiring an interest in the premises as a *bonâ fide* purchaser for value and without notice of the fraud, would hold the interest so acquired against the plaintiffs. Let us therefore see what interests were acquired after January 21st, 1880.

It is found that Francis A. Atwood had taken a mortgage of one of the pieces of land embraced in the mortgage to Garwood H. Atwood, prior to the execution of the latter mortgage, to secure a note of $1000. This mortgage was made on the 13th of January, 1871, while the latter, upon both pieces, was made on the 10th of June, 1871. It does not appear that this mortgage has ever been discharged or the mortgage debt paid. If so, it must stand as a prior incumbrance on the single piece of land covered by it. But the pleadings are silent concerning this mortgage. Paragraph four of the complaint alleges that "the defendant, Francis A. Atwood claims some interest in said premises, *which interest accrued after said mortgage to said Garwood H. Atwood*, the nature and extent of which is to the plaintiffs unknown."

The answer of Francis A. Atwood admits this to be true, only alleging in addition that his interest is an absolute title in fee simple, so that he seems to predicate his title solely on a subsequently acquired interest.

It is also found that on the 8th of June, 1871, two days before the plaintiffs' mortgage was executed, Patrick and Mary Farrell mortgaged the whole premises to the Water-

bury Savings Bank to secure a loan of $3000; and that on the 3d of June, 1872, after the plaintiffs' mortgage, the Farrells mortgaged the entire premises to David M. Cowles and Daniel Curtis, to secure a loan of $1500; this last mortgage being made subject to the Francis A. Atwood mortgage of $1000, the Waterbury Savings Bank mortgage of $3000, and the Garwood H. Atwood mortgage of $1500. It is then found that on March 2d, 1882, Cowles and the executor of Curtis quitclaimed the premises to Francis A. Atwood; that Patrick Farrell and his wife on the same day made a like quitclaim; and that on the 30th of March, 1882, the Waterbury Savings Bank also quitclaimed to Francis A. Atwood all its interest. The effect of all these releases, if the mortgage held by the plaintiffs is to be regarded as cancelled, was to vest an absolute title in Francis A. Atwood, which title he claims to hold.

But it is found that "no evidence was offered to show that the said Francis A. Atwood paid any consideration for these deeds." They were therefore releases of the legal title held by these parties, so as to vest a clear and absolute legal title in him, with no payment or other consideration moving from him. In these circumstances, supposing him to have acted in good faith in the matter, he was not a *bonâ fide* purchaser for value, and the rights which he thus acquired can not take precedence of the equitable rights of the plaintiffs. This principle is too well settled to require the citation of authorities.

At the time the plaintiffs purchased the notes from Tolles he delivered to Mrs. Tuttle, one of the plaintiffs, the mortgage by which they were secured. No assignment of it was necessary; the notes in equity drew to themselves the security. Mrs. Tuttle, in taking the mortgage, held it for the benefit of both the plaintiffs, and it is now to be regarded as their joint property. All rights in the premises accruing subsequently to the taking of the mortgage, with the equity of redemption in the Farrells, having been conveyed to Francis A. Atwood, he stands as the sole party to be foreclosed.

We therefore advise the Superior Court to pass a decree setting aside the release given by Garwood H. Atwood on the 21st of January, 1880, and foreclosing the right of Francis A. Atwood to redeem the premises unless he shall, within such time as the court shall limit, pay the two notes held by the plaintiffs with interest; his own right, if any he has, as a prior mortgagee of one of the pieces of land not to be affected by the foreclosure. Also that Garwood H. Atwood convey to the plaintiffs the legal title to the premises acquired by the mortgage to him, or on his failure to do so that the legal title become vested in them.

In this opinion the other judges concurred.